# IN THE COURT OF APPEALS OF IOWA

No. 16-0366
Filed April 27, 2016

**IN THE INTEREST OF M.A.,**
**Minor Child,**

**T.M., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Susan Flaherty,
Associate Juvenile Judge.


        A mother appeals from the order terminating her parental rights.
**AFFIRMED.**


        Robin L. Miller, Marion, for appellant mother.

        Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant
Attorney General, for appellee State.

        Julie Gunderson Trachta of Linn County Advocate, Inc., Cedar Rapids, for
minor child.


        Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**DANILSON, Chief Judge.**

A mother appeals the termination of her parental rights to her child, M.A.[1] She contends that the State did not prove by clear and convincing evidence (1) the child could not be returned to her care at the time of the termination hearing and (2) termination is in M.A.'s best interests. Because the mother continues to struggle with alcohol abuse, poses a risk of danger to M.A., and stabbed another individual in the mother's home with children present, despite being provided numerous services by the Iowa Department of Human Services (DHS) and an extended period of time to provide a safe environment for M.A., we affirm the termination of parental rights.

**I. Background Facts and Proceedings.**

M.A., born in September 2014, tested positive for THC at birth, and DHS became involved and offered services. A child abuse assessment was completed, resulting in a founded report. At the time of M.A.'s birth, the mother was frequently using marijuana, did not have stable housing, and was not participating in mental health treatment despite continuing to struggle with grief. The mother's grief stemmed from the death of her first child at the age of five months in September 2013.[2]

The mother left M.A. in the care of her mother throughout the early involvement with DHS until late November 2014 when the mother became violent with the grandmother and took M.A. The incident resulted in charges being filed against the mother and a no-contact order entered between the mother and

---

[1] Paternity had not been established at the time of the termination hearing.
[2] The police and DHS investigated the child's death. Both concluded the cause of death was undetermined, and no charges were filed against the mother.

grandmother. A temporary removal order was entered November 24, 2014, placing M.A. in the custody of DHS and in the care of M.A.'s purported paternal grandmother.

The mother and purported father stipulated the child was a child in need of assistance (CINA) and the child was adjudicated CINA on December 19, 2014. A dispositional hearing was held January 21, 2015. In March 2015, M.A. was removed from the care of his paternal grandmother at her request after a paternity test revealed her son was not M.A.'s father. M.A. was placed in foster family care.

The termination petition was filed on June 16, 2015. In July 2015, the mother was given unsupervised visitation. The mother engaged in DHS services throughout the proceedings and made improvements. On September 21, 2015, hearing was set on the termination petition. Rather than proceed with the hearing, the court granted the parties' request for extension. M.A. was moved to a different foster placement in October 2015, where he remained until the time of the termination hearing. Hearing on the termination petition was continued to January 29, 2016.

By December 2015, it appeared the mother was continuing to make improvements, and she began to receive extended overnight visitation with the child, with up to three consecutive overnight visits each week. However, after the extended overnight visitation plan began, issues began to arise. There were concerns the mother was not properly addressing M.A.'s medical needs, she began missing a number of scheduled drug/alcohol tests, and it was later learned that she had stopped taking her mental health medication.

These issues led up to an incident on the early morning of January 1, 2016, while M.A. was in the mother's care. On that date, officers were called to the location of the mother's apartment by neighbors reporting an altercation involving the mother stabbing another person with a knife. The mother's uncle, Andre, his wife Shannon, and their two children were at the apartment.[3] The parties had reportedly been drinking. An officer testified that he spoke with the mother and she smelled of alcohol, had bloodshot eyes, poor balance, and slurred speech. Shannon had a laceration on her arm, and the mother was arrested for assault with a weapon and taken to jail. M.A. was left in the care of Andre and Shannon.

Although the mother continued engaging in services, at the time of the termination hearing on January 29, 2016, the mother had missed ten drug/alcohol tests in the prior approximate two months, and M.A. had been out of her custody for over a year. The juvenile court terminated the mother's parental rights by an order entered February 12, 2016. The court held:

> [M.A.]'s best interests would be served by termination of parental rights and adoptive placement. [M.A.] has now been removed from his mother's custody for fourteen of the sixteen months of his life. [The mother] has been provided additional time to make the needed changes to provide a safe, stable, drug free environment for [M.A.], and even with the additional time she has not demonstrated the ability to do so. Any additional time comes at the expense of [M.A.]'s need for permanency.

The mother now appeals.

---

[3] There was strong evidence indicating that Andre, Shannon, and their children were living in the basement of the mother's apartment at the time. The mother was not permitted to allow other individuals to reside in her apartment and did not report that the family was living at her residence.

**II.  Standard of Review.**

We review termination of parental rights de novo.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them."  *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011).

**III.  Analysis.**

The supreme court has provided a three-step framework for analysis of termination of parental rights:

> First, the court must determine if the evidence proves one of the enumerated grounds for termination in section 232.116(1). . . . Next the court must consider whether to terminate by applying the factors in section 232.116(2).  Finally, if the factors require termination, the court must then determine if an exception under section 232.116(3) exists so the court need not terminate.

*In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (internal citations omitted).

**A.  Grounds for Termination.**  The mother's parental rights were terminated pursuant to Iowa Code section 232.116(1)(h) (2015) (a child three years of age or younger who has been adjudicated a CINA and has been out of the custody of his parents for at least six of the last twelve months and cannot be returned to the custody of the parents at the present time based on clear and convincing evidence).

It is undisputed that the child was younger than three years of age, adjudicated a CINA, and out of the mother's care for at least six of the last twelve months at the time of the termination hearing.  The mother asserts that termination is improper under section 232.116(1)(h) because it was not proved by clear and convincing evidence that the child could not be returned to her care.

At the termination hearing, the mother requested additional time to reunify with her son, and she admitted that she needed "a month or two" to be able to take M.A. into her care full time with no assistance. Additionally, the juvenile court found:

> If returned to the custody of [the mother], [M.A.] would be subject to adjudicatory harms due to his mother's continued poor decision making, her substance abuse, resulting in dangerous situations such as the events of January 1, 2016 and also caused [M.A.] to be born exposed to marijuana, her inconsistency in attending to her mental health needs, and the ongoing risk of repeated incidents of denial of critical care and exposure to substance abuse and unsafe associates. . . . If returned to the custody of [the mother], [M.A.] would continue to remain a child in need of assistance.

The record supports by clear and convincing evidence that M.A. could not be returned to the care of the mother at the time of the termination hearing. The mother missed ten drug screens within about two months before the termination hearing. The crowning blow, however, was the knife incident at her home when M.A. and other children were present and the mother was intoxicated. Thus, proper grounds exist for termination of the mother's parental rights pursuant to section 232.116(1)(h).

**B. Best Interests.** The mother also contends that it was not proved by clear and convincing evidence that termination of her parental rights is in M.A.'s best interests.

Section 232.116(2) provides:

In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

The juvenile court determined that M.A.'s best interests would be served by termination of the mother's parental rights to allow for his need for permanency, stating:

> [M.A.] is adoptable. He is young and personable. [M.A.] has a bond with his mother, although he has spent the majority of his life in the care of others. [M.A.] has the ability to develop healthy bonds and appears to be doing so with his current foster parents. His foster parents are interested in providing permanent placement for [M.A.] by adoption.
>
> [M.A.]'s safety, health, and welfare can best be ensured by continued placement in foster family care until an adoptive placement is made. The best placement for furthering the long-term nurturing and growth of the child is permanent placement by way of adoption. The physical, mental, and emotional condition and needs of the child can best be met by adoption.

M.A. has been placed in four different homes and out of his mother's care for the majority of his short life. The mother was granted additional time to provide a safe and drug-free environment for M.A. and had not yet done so at the time of the termination hearing. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41.

M.A. deserves permanency. We agree with the juvenile court that the best opportunity for furthering M.A.'s long-term nurturing and growth is termination and adoption.

## C. Exceptions or Factors against Termination.

The mother does not assert, and we do not find applicable the section 232.116(3) exceptions against termination. Although we recognize the bond M.A. has with the mother, the record does not support a finding that the parent-

child relationship is so strong as to outweigh the child's best interests and need for permanency. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) ("Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." (citing *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990)).

## IV. Conclusion.

The record supports by clear and convincing evidence that grounds exist for termination, termination is in M.A.'s best interests, and no exception precludes the need for termination of parental rights. We therefore affirm termination of the mother's parental rights to M.A.

**AFFIRMED.**